UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 10-21311-CIV-HOEVELER

FREDERIC J. NEWMAN, as personal representative
of the Estate of DAVID A. NEWMAN,

      Plaintiff,

v.

AXA EQUITABLE LIFE INSURANCE COMPANY,
formerly known as THE EQUITABLE LIFE
ASSURANCE SOCIETY OF THE UNITED STATES,

      Defendant.
_____ _____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. For the reasons stated below, the Court has determined that the Amended Complaint is subject to dismissal, with prejudice.

## PROCEDURAL BACKGROUND

The Court's review of the parties' submissions reveals that the parties do not disagree as to the procedural history of this case, but rather disagree as to the effect of certain prior events. The Court "may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment" when said facts are taken from documents that are public records or documents that are both undisputed (or not subject to reasonable dispute) and central to a plaintiff's claim. Horne v. Potter, 392 Fed. Appx. 800, 802 (11th Cir. 2010) ("The district court

1

properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))). Thus, although this matter is before the Court on a motion to dismiss, the Court may consider certain documents outside the pleadings, i.e., the documents submitted with the Defendant's motion to dismiss,[1] if such documents are central to Plaintiff's complaint and are undisputed or not subject to reasonable dispute.

In June of 2004, David Newman, the son of Frederic Newman (the Plaintiff in the Instant Case), filed suit in state court[2] against AXA Equitable Life Insurance Company ("Equitable") for breach of contract as to a disability income insurance policy issued to him in 1990. David Newman alleged that Equitable had failed to properly evaluate his disability claim, filed in 2003, and he challenged the denial of his request for disability benefits. Equitable, in response, asserted affirmative defenses and counterclaimed against David Newman for breach of fiduciary duty and breach of his Agency Contract. (Equitable alleged that David Newman, who was both the insured and the agent on his own disability policy, breached his

---

[1]Defendant's pending motion to dismiss incorporates the arguments contained in its original motion to dismiss (ECF No. 19), and all attachments to the briefing of that original motion (e.g., the Reply brief, with attachments, at ECF No. 29).

[2]The case was filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Case No. 04-14126-CA.

2

Agency Contract with Equitable and his fiduciary duty by submitting his own application with material misrepresentations and omissions of fact which affected the underwriting of his policy.[3]) For brevity's sake, the Court will refer to this state court lawsuit as the "2004 State Action."

During the pendency of the state court litigation, David Newman died, on March 14, 2008.[4] The following month, a notice of death was filed in the state court, and an estate was opened for the decedent. Frederic J. Newman was appointed personal representative as of May 5, 2008.[5] Approximately one year later, notice was given by the state court that the 2004 State Action had not been prosecuted and was subject to dismissal; after no objections were received, the case was dismissed in June 2009.

---

[3]For example, Equitable claimed that David Newman previously had consulted with and been treated by a psychiatrist; had been treated for an emotional disorder; had been diagnosed with, and treated for, major depression; and had used cocaine and other drugs not prescribed by a physician – and failed to disclose any of this information despite specific questions on the application seeking this information. ECF No. 19-2 (Equitable's Amended Answer and Counterclaim in the 2004 State Action).

[4]According to Plaintiff's First Amended Complaint, his son was found dead at home, "with 4 Fentanyl pain-killer patches attached to his skin, and pain-killing drugs and anti-depressants in his bloodstream." ECF No. 33, ¶ 40.

[5]Although the Court has not located in the file a copy of an order appointing Frederic J. Newman as Personal Representative of his son's estate, it does not seem to be a fact in dispute. See, e.g., ECF No. 29-1 (Equitable's Motion to Dismiss for Failure to Substitute Party Plaintiff), which asserts that a Personal Representative was appointed as of May 5, 2008, and ECF No. 19 (Equitable's Motion to Dismiss the Instant Action), which states that Frederic Newman, "as personal representative of David Newman's estate, moved to be substituted into the 2004 Florida Case as its plaintiff." Plaintiff has not contradicted these assertions.

According to the state court docket (a matter of public record) and the parties' submissions, on August 24, 2009 - two months after the case had been dismissed for failure to prosecute, and seventeen months after his son's death - Frederic Newman attempted to substitute himself as plaintiff in the case, indicating that he was the personal representative of his son's estate. Equitable then moved to dismiss the case for failure to substitute a party plaintiff in a timely manner.[6] Mr. Newman's attempted substitution apparently was determined by the state court to be untimely; on November 17, 2009, the state court denied Mr. Newman's request and granted Equitable's motion to dismiss, thereby dismissing the 2004 State Action. Mr. Newman appealed to the state appellate court, and the Third District Court of Appeal affirmed the dismissal in an opinion issued on October 27, 2010.

On March 12, 2010, during the pendency of the appeal of the 2004 State Action, Plaintiff, as personal representative of his son's estate, filed a new suit against Equitable in state court, which Equitable removed to this Court (the "Instant Action"). In the Instant Action, Plaintiff's original complaint asserted three counts against Equitable and one count against an unidentified "John Doe." The counts were not specifically labeled - however, each count referred to the same disability insurance policy that was at issue in the 2004 State Action and the policy was included as an exhibit in support of the allegations. Additionally, each count requested an award of attorney's fees pursuant to Fla. Stat. § 627.428 (the statutory

---

[6]The case had been dismissed, but apparently had been re-instated, temporarily, when Mr. Newman filed his motion. ECF No. 19 (Defense counsel's statement of the events.)

provision that allows for attorney's fees to be awarded in successful suits for breach of insurance contracts).

After a period of delay,[7] Defendant responded to the complaint with a motion to dismiss, arguing that the dismissal of the 2004 State Action barred the Instant Action and that there was no basis for relief as to a "John Doe." This Court granted Defendant's motion to dismiss, noting the preclusive effect of the state court's dismissal of the 2004 State Action, and permitting Plaintiff "one opportunity to file an amended complaint." Plaintiff was advised by the Court that any amended complaint must include a single cause of action in each count, specifically labeled, and also must include only those claims, supported by sufficient allegations, which could proceed despite the state court's dismissal of the 2004 State Action.

On April 6, 2012, the Plaintiff filed a First Amended Complaint alleging three counts against Equitable: Wrongful Death Caused by Breach of Contract (Count 1), Wrongful Death Caused by Negligence (Count 2), and Intentional or Negligent Infliction of Severe Emotional Distress (Count 3). In Counts 1 and 2, Plaintiff alleges that Defendant denied an insurance claim by Plaintiff's son, which caused Plaintiff's son's illnesses to worsen, and "caused him to die broke and alone." In Count 3, Plaintiff alleges that Defendant intentionally or recklessly or

---

[7]Defendant requested a stay during the pendency of the state court appeal, which Plaintiff opposed. This Court denied the request, as moot, in January 2011, after determining that the state appellate court had issued its mandate in November 2010, affirming the lower court. As nothing was filed by the parties for several months, this Court entered an Order to Show Cause on July 22, 2011 - noting that Plaintiff had failed to seek a default or otherwise move the case along. As Defendant ultimately filed a motion to dismiss, default was not warranted.

negligently exhibited extreme and outrageous conduct against Plaintiff's son, which included, *inter alia*, false accusations of fraud, psychological attacks, and calling him insulting names ("criminal" and "liar").   Plaintiff claims that this conduct caused David Newman "to suffer severe emotional distress," and "greatly magnified David Newman's emotional distress, and caused Newman psychological harm and bodily harm, which caused [his] premature death, at age 39, on March 14, 2008." ECF No. 33, ¶¶ 38-40.

Defendant again filed a motion to dismiss, seeking dismissal with prejudice and arguing that Plaintiff's amendment failed to correct the deficiencies of the earlier complaint, and that any further amendment would be futile as Plaintiff cannot overcome the preclusive effect of the state court's dismissal of the 2004 State Action and affirmance of that decision on appeal.   Defendant also argues that Plaintiff has failed to plead legally sufficient allegations to establish a plausible, non-speculative claim for the negligent or intentional infliction of emotional distress.   Plaintiff responds that he has sufficiently stated claims which should be allowed to proceed to the discovery stage, and that any failure of his son's prior counsel in the 2004 State Action (to substitute a party plaintiff within the allowed time) should not serve as a bar against Plaintiff's present claims.[8]

_____

[8]While Plaintiff Mr. Newman complains that his son's counsel "failed to substitute an indispensable party [i.e., Mr. Newman, as personal representative of his son's estate] as plaintiff in David's place within the time permitted under Rule 1.260" the record reveals that Mr. Newman was aware of the state litigation and, presumably, could have taken steps to assure that a timely substitution was made. The Court notes that Plaintiff was present during the mediation of the 2004 State Action, on July 12, 2005, as an observer.  "I personally witnessed the damage that

<u>LEGAL STANDARD</u>

In determining the sufficiency of a complaint at the motion to dismiss stage, the factual allegations and inferences contained therein must be accepted as true and construed in whatever light is most favorable to the Plaintiff. However, as the Supreme Court explained in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u>, at 678. Accordingly, courts must engage in a two-pronged analysis: "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" <u>Am Dental Assoc. v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010) (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 679). These allegations "must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

---

the abuse [during the mediation] caused David." ECF No. 23 (Affidavit of Frederic J. Newman, September 12, 2011). Indeed, according to Plaintiff, he also was an agent for Equitable at the time his son applied for the subject insurance policy in 1990, and father and son worked together as insurance agents for several years; in addition, Plaintiff states that he "was present with David when he saw [the insurer's copy of the insurance application reportedly signed by David Newman] for the first time." ECF No. 23.  Given the Plaintiff's statement of these facts, the record suggests that Plaintiff was very much aware of the 2004 State Action, at least at its inception and continuing until the time of mediation, if not later.

## ANALYSIS

As this Court explained in its prior order, for the Instant Action to survive dismissal, Plaintiff has to demonstrate why his claims may proceed despite the state court's dismissal of the 2004 State Action. A review of the Amended Complaint reveals that Plaintiff has failed to remedy the deficiencies of his original complaint; indeed, Plaintiff only made the following changes: added labels to each count, slightly altered some statements, removed a demand for attorney's fees from Counts 1 and 2 in an attempt to distinguish Counts 1 and 2 as not claiming breach of contract,[9] added allegations to Count 3 relating to specific conduct of Defendant during the 2004 State Action (ECF No. 33, ¶ 39), and added allegations of negligent infliction of emotional distress in addition to the original claim of intentional infliction of emotional distress. Defendant seeks dismissal, persuasively arguing that Plaintiff's claims are barred by the litigation and dismissal of the 2004 State Action, or otherwise are unable to succeed. The Court addresses the Counts, specifically, below.

---

[9]Plaintiff says that he "has further attempted to clarify that he is not seeking breach-of-contract damages in this wrongful death count [Count 1] .... and has made more specific allegations about [Equitable's] negligent mishandling of Newman's disability claim [Count 2]."

8

Counts 1 and 2

Plaintiff's claims, as they appear in Counts 1 and 2 in the First Amended Complaint, are based on allegations that Equitable breached its insurance contract with David Newman when it failed to pay his claim, and then when it subsequently counterclaimed against him (accusing him of making material misrepresentations in the application process).   ECF No. 33, ¶¶ 10-11, 23-26, 38-40.   Specifically, in Count 1, Plaintiff claims that Equitable breached its contract with David Newman by denying his claim, which then caused his illnesses to worsen, "and caused him to die broke and alone."   ECF No. 33, ¶¶ 10-11.   In Count 2, Plaintiff asserts that Equitable was negligent in failing to use reasonable care in investigating, adjusting and supervising David Newman's claim, and because of this alleged negligence David Newman was not provided disability benefits; Plaintiff claims that this negligence caused David Newman's illnesses to worsen "and caused him to die broke and alone." ECF No. 33, ¶¶ 23-26.

It is well established in the Eleventh Circuit that "a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."   Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999); see, also, ICC Chem. Corp. v. Freeman, 640 So. 2d 92, 93 (Fla. 3d DCA 1994) ("The doctrine of *res judicata*

provides that a final judgment or decree on the merits rendered by a court of competent jurisdiction is conclusive of the rights of the parties and their privies, and constitutes a bar to subsequent action or suit involving the same cause of action or subject matter."). The parties' arguments focus on the first and fourth elements of this test, i.e., was there a final judgment on the merits, and is the same cause of action involved.[10]

In order to determine whether the dismissal of the 2004 State Action was a final judgment on the merits, the Court turns to Florida Rule of Civil Procedure 1.420(b). "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication on the merits." Fla. R. Civ. P. 1.420(b). The state court dismissed the 2004 State Action, implicitly applying Florida Rule of Civil Procedure 1.260(a)(1) - which had been cited in Equitable's motion to dismiss, for failure to timely substitute a personal representative in

---

[10]The second factor is not in dispute, as the state court clearly was a "court of competent jurisdiction." As to the third factor, identity of the parties "or those in privity with them," the Court notes that Plaintiff has not suggested that he is not in privity with his son but instead suggests that the wrongful death claims did not accrue until after the 2004 State Action was filed. Plaintiff is pursuing this case as personal representative of his son's estate, claiming wrongful death related to actions which were the subject of litigation by his son at the time of his son's death. In light of these specific allegations, the Court finds that - at least for the purposes of the res judicata analysis - Plaintiff stands in privity with his son's interests in the 2004 State Action, and, thus, the third factor has been satisfied.

David Newman's place following his death.[11]   The state court's order did not indicate that the dismissal was for lack of jurisdiction, improper venue, or the decedent's failure to join an indispensable party; absent one of these exceptions (from Rule 1.420(b)), the state court's order must be construed as a judgment on the merits, i.e., it disposed of the claims at issue in the 2004 State Action, that Equitable breached the insurance policy and improperly handled David Newman's claim for benefits.[12]   "The language of Rule 1.420(b) is unambiguous.   Unless otherwise specifically exempted, a dismissal constitutes an adjudication on the merits." Allie v. Ionata, 503 So.2d 1237, 1242 (Fla. 1987).[13]

---

[11]Specifically, the state court, after hearing argument of counsel, denied Plaintiff's Motion for Enlargement of Time to Substitute Party, denied Plaintiff's Sworn Motion to Substitute Party, and granted the Defendant's Motion to Dismiss for Failure to Substitute Party Plaintiff.  The order does not state that the dismissal was with prejudice, but the November 2009 order was construed as a final order by the state appellate court, which issued a *per curiam* opinion affirming the order in October 2010.

[12]Plaintiff admits that the effect of the dismissal was the same as if it had been entered "with prejudice." "Newman acknowledges, of course, that because the statute of limitations had already run on his case when the judge signed the dismissal order, the result of the dismissal was the same as it would have been had a dismissal with prejudice been entered."  ECF No. 22 (Plaintiff's response in opposition to the motion to dismiss the original complaint in the Instant Action).

[13]The prior final judgment in Allie dismissed a claim without specifying that it was either without prejudice or not an adjudication on the merits; the Supreme Court of Florida held that dismissals based on limitation statutes are adjudications on the merits for the purpose of applying the doctrine of *res judicata*. Allie, 503 So.2d at 1242.  Courts in Florida have consistently relied on Rule 1.420(b) in holding that a dismissal on statute of limitation grounds is an adjudication on the merits. See, e.g., Carnival Corp. v. Middleton, 941 So.2d 421, 424 (Fla. 3d DCA 2006) ("[A] dismissal based on statute of limitations grounds constitutes an adjudication on the merits for purposes of *res judicata*.").

11

The sole remaining factor to consider with respect to application of the doctrine of *res judicata* is whether the same cause of action is involved. Florida law further specifies that "[i]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, the two cases are really the same 'claim' … for purposes of *res judicata*." Madura v. Countrywide Home Loans, Inc., 344 Fed. Appx. 509, 517 (11th Cir. 2009) (citing Gordon v. Gordon, 59 So. 2d 40, 44 (Fla. 1952)).

Plaintiff contends that his wrongful death claims are viable despite the dismissal of the 2004 State Action, and argues that those claims did not accrue until his son's death in 2008, i.e., after the 2004 State Action was filed. However, Plaintiff's position does not comport with Florida law. The Supreme Court of Florida has remarked that while the Florida Wrongful Death Act[14] created an independent (from the decedent's claim) claim for the survivors, these claims are also derivative in the sense that they are dependent upon a wrong committed upon another person. "The right of the survivors to recover is predicated in the Act on the decedent's right to recover. In other words, recovery is precluded if the decedent could not have maintained an action and recovered damages if death had not

_____

[14]Florida's Wrongful Death Act provides: "When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person …, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person … that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony." Fla. Stat. § 768.19.

ensued." <u>Laizure v. Avante at Leesburg, Inc.</u>, 109 So.3d 752, 759-60 (Fla. 2013) (answering a certified question that the execution of an arbitration agreement by a party binds the decedent's estate in a subsequent wrongful death action arising from an alleged tort within the scope of the otherwise valid agreement).

The derivative nature of wrongful death actions in Florida was recognized by the Florida Supreme Court in <u>Variety Children's Hosp. v. Perkins</u>, when it held that "a judgment for *or* against the decedent in an action for his injuries commenced during his lifetime. . .will operate as a bar to *any* subsequent suit founded upon his death. . . . This rule is supported by the theory that a cause of action *merges into the judgment and, once the judgment is rendered and final, no cause of action exists."* <u>Variety</u>, 445 So. 2d 1010, 1011-12 (Fla. 1983) (emphasis added, internal citations omitted). Here, David Newman commenced an action within his lifetime to recover for Defendant's wrongdoing with regard to breaching its insurance policy by refusing to pay his claim; because he filed that 2004 State Action and because that claim was already adjudicated on the merits by the dismissal, as discussed above, his father is precluded from the pursuit of any derivative action.

Even accepting as true all of the factual allegations in Counts 1 and 2 of Plaintiff's First Amended Complaint, Plaintiff has not demonstrated that these claims may proceed. In essence, the first two Counts in the Instant Action are based on the same factual predicate as the claims asserted in the 2004 State Action, i.e., the alleged mishandling and denial of the claim for disability benefits, and

consequently are barred - regardless of how Plaintiff may try to restate them - because they have already been adjudicated by a court of competent jurisdiction and resulted in a final judgment on the merits.

## Count 3

Count 3 relies on an allegation that the insurance policy was breached by Equitable's denial of David Newman's claim, similar to the allegations in Counts 1 and 2. In Count 3, Plaintiff asserts that "Equitable intentionally or recklessly or negligently exhibited extreme and outrageous conduct against David Newman" and this caused "psychological harm and bodily harm which caused David A. Newman's premature death." ECF No. 33, ¶¶ 37-40. These allegations all relate to conduct before and during the 2004 State Action. For example, Plaintiff alleges that Equitable denied David Newman's claim for disability insurance benefits and "used false accusations of fraud to justify its denial of Newman's claim ... ; Equitable's representatives used psychological attacks against Newman ... and threatened to use their 'deep pockets' to win at any cost; ... threatened to 'dig up dirt' from Newman's past in order to 'discredit' him in front of the jury; . . . personally humiliated Newman by calling him insulting names, like 'criminal' and 'liar'; ... threatened Newman with criminal prosecution for fraud; [and] filed a counterclaim against Newman as a tactic to bully Newman into dismissing his case or accepting a lowball offer." ECF No. 33, ¶ 39. These allegations all arise out of the same

14

nucleus of operative fact as those claims already dismissed in the 2004 State Action and, therefore, are barred; even assuming, *arguendo*, that Plaintiff's claims are not barred by the dismissal of the 2004 State Action, Plaintiff still has failed to plead a claim for intentional or negligent infliction of emotional distress, as discussed below.

<u>Intentional infliction of emotional distress</u>

To succeed on a claim of intentional infliction of emotional distress, Plaintiff must prove: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. <u>Saludes v. Republica De Cuba</u>, 655 F. Supp. 2d 1290 (S.D. Fla. 2009). A review of the allegations contained in the First Amended Complaint shows that Plaintiff has failed to allege conduct legally sufficient to qualify as extreme and outrageous conduct. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" <u>See</u>, <u>e.g.</u>, <u>LeGrande v. Emmanuel</u>, 889 So. 29 991, 995 (Fla. 3rd DCA 2004) (explaining that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"(internal quotation marks omitted)).

Plaintiff's allegations, in essence, are that David Newman was subject to false accusations of fraud and criminal conduct, and that he faced aggressive opposition from Equitable during the proceedings in the 2004 State Action. Under Florida law, "even claims of intentional infliction of emotional distress based on false accusations of criminal activity and false arrest fail because such conduct, as a matter of law, is not sufficiently outrageous." Cortez v. Home Depot U.S.A., Inc., 2013 U.S. Dist. LEXIS 13788 (S.D. Fla. January 31, 2013) (granting summary judgment for defendant and finding that employee's claims that she was falsely accused of theft, which resulted in her arrest, were insufficient to establish a claim for intentional infliction of emotional distress); see, also, LeGrande, 889 So. 2d at 994 (holding that falsely accusing a pastor in front of his congregants of buying a luxury car with money stolen from the church does not qualify as extreme and outrageous conduct"); Bilbrey v. Myers, 91 So. 3d 887, 892 (Fla. 5th DCA 2012) (determining that a church pastor's statements, which were made over a two year period, that one of the church members "was a homosexual with an immoral character, and tried to break up his relationship with his fiancée" did "not rise to the level of outrageousness as required by law"). Even accepting as true all of Plaintiff's allegations in Count 3, the Court concludes that such conduct - while disturbing - falls short of satisfying the high level of conduct, measured

objectively,[15] required under Florida law to state a claim for the intentional infliction of emotional distress.

Negligent infliction of emotional distress

As to the claim for negligent infliction of emotional distress, the standard is even more difficult to meet. Under Florida law, an action for negligent infliction of emotional distress requires demonstration that a physical injury manifested from an extreme emotional distress. To recover damages for emotional distress under a negligence theory, a plaintiff must demonstrate that he: (1) suffered a discernable physical injury, (2) the physical injury was caused by the psychological trauma, (3) the plaintiff was involved in the event causing the negligent injury to another, and

---

[15]Plaintiff asks this Court to view the allegations in Count 3 from a subjective perspective. In support of this proposition, Plaintiff relies on <u>Dependable Life Ins. Co. v. Harris,</u> 510 So. 2d 985 (Fla. 5th DCA 1987), wherein the insurer ceased paying disability benefits after already awarding and paying the benefits to the insured for more than one year. The insurer told the insured that he was a cheat and a fraud knowing that the insured, who suffered from depression, was "especially sensitive, susceptible, or vulnerable to injury caused by mental distress." <u>Id.</u> at 988. Plaintiff's reliance on <u>Dependable</u> is misplaced. Florida law requires allegations for an emotional distress claim to be viewed from an objective "reasonable person" perspective. <u>See</u> <u>LeGrande</u>, 889 So. 29 at 994 (noting that the focus is on an *average* member of the community who would find the conduct outrageous, <u>citing</u> Restatement (Second) of Torts § 46 (1965), emphasis added); <u>see, also,</u> <u>Frias v. Demings</u>, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011) ("This is an objective question, the subjective response of the victim does not control...."[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." (<u>quoting</u> Restatement (Second) of Torts § 46, cmt. j (1965)).

17

(4) the plaintiff had a close personal relationship to the directly injured person. LeGrande, 889 So. 2d at 995, citing Zell v. Meek, 665 So. 2d 1048, 1052 (Fla. 1995). An example of a recognized claim for negligent infliction of emotional distress in Florida is found in Champion v. Gray, 478 So. 2d 17 (Fla. 1985), a case involving a mother so "overcome with shock and grief that she collapsed and died on the spot" upon arriving at the scene of her daughter's death which had been caused by a drunk driver; the Supreme Court of Florida noted that it was "reasonably foreseeable that such a person may suffer injury." Id. at 18.[16]

To state it simply, the claim in Champion was framed as: a physical injury to a special bystander/observer which was foreseeably caused by the tortfeasor's conduct, despite the lack of a direct impact on the bystander by the tortfeasor. The

---

[16]The decision in Champion observed that "[t]he price of death or significant discernible physical injury, when caused by psychological trauma resulting from a negligent injury imposed upon a close family member within the sensory perception of the physically injured person, is too great a harm to require direct physical contact ["impact"] before a cause of action exists." 478 So. 2d at 18-19. In a decision decided the same day as Champion, the Supreme Court of Florida rejected a claim for psychic damages suffered by a son who witnessed his mother's death, as the trauma had not caused a demonstrable physical injury. Brown v. Cadillac Motor Car Division, 468 So. 2d 903, 904 (Fla. 1985). Similarly, a Florida court did not find a basis for a claim of negligent infliction of emotional distress brought by siblings whose mother's corpse had been dismembered, burned and scattered on the family's farm by their brother, as the court found that the siblings - although they suffered from some health problems after the event (depression, insomnia, anxiety, diabetes) - were not present when their brother committed those acts and therefore failed to establish a "physical impact or sufficient physical injuries" resulting from his actions. Elliott v. Elliott, 58 So. 3d 878 (Fla. 1st DCA 2011) (reversing a jury verdict awarding damages for negligent infliction of emotional distress).

concepts of both foreseeability[17] and indirect participation in the triggering event are important in understanding this cause of action, along with the necessary physical injury which is caused by the triggering event. Florida courts have not considered the aggravation of pre-existing conditions such as diabetes or "emotionally-triggered asthma" to be sufficient "physical impact" to establish a claim for negligent infliction of emotional distress, Gonzalez-Jimenez de Ruiz v. U.S., 231 F. Supp. 2d 1187, 1190, 1201-02 (M.D. Fla. 2002), aff'd 378 F.3d 1229, 1231 (11th Cir. 2004)[18], nor have Florida courts permitted this tort to extend to a claim for "psychic harm alone," Zell, 665 So. 2d at 1052. "The essence of our holding [in Champion] was to recognize a claim where an actual physical injury could be demonstrated to be caused by psychic trauma. Temporal proximity will usually be an important factor for the judge or jury to consider in resolving the factual question of causation.... [T]he shorter the interval of time between the psychic impact and the physical injury the more weight this factor may be given." Id. at 1053. See, also, Gonzalez-Jimenez de Ruiz, 231 F. Supp. 2d at 1190 ("Florida law is clear that 'intangible, mental injuries are insufficient to meet the physical injury

---

[17]"Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992).

[18]The court in Gonzalez-Jimenez de Ruiz v. U.S., found that children who alleged that the United States Bureau of Prisons had deceptively failed to provide them with access to their incarcerated father during his illness and failed to inform them of his death, and had caused them mental anguish, had failed to establish any major adverse physical impact to support their claim for negligent infliction of emotional distress. 231 F. Supp. 2d at 1190, 1201-02.

requirement [of a claim for negligent infliction of emotional distress].").  In light of this precedent, the Plaintiff's claim in Count 3 falls far short of alleging a basis to proceed under the negligence theory of the infliction of emotional distress.

Plaintiff's son was the direct recipient of the alleged psychological trauma, and Plaintiff argues that his son's death was the physical injury resulting from such trauma.  Plaintiff alleges that Defendant's conduct during the 2005 mediation was extreme, particularly the false accusations of fraud leveled against David Newman, but the mediation took place almost three years prior to David Newman's death - so there appears to be a distant, if any, temporal connection.[19]  And all of the alleged conduct occurred during the handling of the claim and the pendency of the 2004 State Action.  While Plaintiff's First Amended Complaint is silent as to the specific dates on which the allegedly outrageous conduct occurred, it is evident that it occurred in the context of the denial of David Newman's claim for disability benefits, i.e., it occurred at some point after his claim was submitted in 2003, and prior to his death in 2008, and the essence of these assertions is that David Newman was falsely accused of wrongdoing.  However, Florida law provides that the tort of negligent infliction of emotional distress is "wholly inapplicable" to a

---

[19]A review of the state court record indicates that in 2007, i.e., the year prior to David Newman's death in March 2008, only the following events were docketed in the case file: an order entered in January 2007 on a motion to compel (apparently an order on Defendant's motion to compel discovery), a motion filed in June 2007 for sanctions (it is unclear from the record which party filed that motion), and a substitution of counsel in September 2007.  No other events are docketed until the notice of Newman's death was record in April 2008.

claim that an individual suffered emotional distress from false accusations made directly against him. LeGrande, 889 So. 2d at 995.[20]

Further, the allegations of causation are scant, at best. Plaintiff alleges that Equitable's "outrageous conduct greatly magnified David Newman's emotional distress, and caused Newman psychological harm and bodily harm, which caused David A. Newman's premature death." ECF No. 33, ¶ 40. In other words, Plaintiff alleges that Defendant's conduct exacerbated a pre-existing condition, which then resulted in David Newman's death (implicitly from an overdose of medication, presumably self-administered). Plaintiff alleges that Equitable "knew or should have known that David was suffering from significant mental illnesses, including major depression, that left David severely and even dangerously vulnerable, and Equitable thereby caused David A. Newman to suffer severe emotional distress." Id., ¶ 38. That statement reveals a misunderstanding of Florida law, however, because the law instead requires that conduct alleged to have caused emotional distress be viewed from an objective "reasonable person" perspective. See LeGrande, 889 So. 29 at 994.

_____

[20]To the extent that Mr. Newman is alleging a claim on his own behalf, i.e., that he in some manner suffered emotional distress which was negligently inflicted by Defendant, the Court rejects such formulation as being unsupported by proper allegations. For example, Mr. Newman asserts that he "has experienced and will continue to experience mental pain and suffering," ECF No. 33, ¶ 41, but this is insufficient to support a claim.

Even assuming that the factual allegations in Count 3 are true, the causation statement is simply too attenuated to permit this claim to proceed as a cause of action for negligent infliction of emotional distress.  The facts alleged by Plaintiff in the Instant Case do not sufficiently allege a causal link between the Defendant's conduct and the ultimate death of David Newman nor could Plaintiff state legally sufficient facts even if given the opportunity to amend his complaint.  While this Court has, in an unrelated context, held that a breach of duty by a psychiatric care provider might "alienate[ ] a patient from psychiatric care he needed desperately and cause[ ] him to deteriorate, unavoidably, to the point of suicide," Perez v. United States, 883 F. Supp. 2d 1257, 1310 (S.D. Fla. 2012), the allegations in the Instant Case do not describe a recognizable breach of duty.

In summary, even accepting each factual allegation as true, the Court does not find that Plaintiff has plausibly stated a claim under Florida law relating to the negligent infliction of emotional distress, as Plaintiff has failed to plead a plausible claim that the alleged harassment caused a physical impact or injury, and has failed to demonstrate that this claim comports with the elements, generally, of such a claim under Florida law.  Moreover, this claim appears to be simply a reframing of the allegations in Count 2, i.e., that Defendant's negligence caused David Newman's death; this Court already has determined that Count 2 is subject to dismissal and finds that Count 3 also is subject to dismissal.

Finally, as all of the conduct allegedly supporting Plaintiff's claim of emotional distress (either intentionally or negligently induced) took place during the state court litigation, i.e., the alleged "verbal abuse" during the state-court mediation (ECF No. 23, at 3),[21] the claim must fail as such conduct is privileged and cannot be the basis of a claim for the infliction of emotional distress. Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606 (Fla. 1994). "Absolute immunity" is granted "to any act occurring during the course of a judicial proceeding" as long as the act is relevant to the judicial proceeding. Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 383-84 (Fla. 2007).

Therefore, the Court finds that Plaintiff's claim of emotional distress, either negligently or intentionally inflicted, must fail as the claim is either: (1) barred by *res judicata* (as having arisen out of the same nucleus of operative facts as the 2004 State Action), or (2) the claim is legally insufficient as it relies on conduct which is considered privileged and therefore cannot serve as a basis for a charge of emotional distress, or (3) the claim fails because it is based on conduct which simply does not rise to the objective level of outrageousness required under Florida law or (4) the

---

[21]Mediation took place on July 12, 2005, approximately three years prior to David Newman's death.  Exh. D of ECF No. 29.

claim fails to include a causally-related physical impact or injury or to otherwise state a claim for relief under a negligence theory.

## CONCLUSION

As the Court has determined that the Amended Complaint fails to state any claims which may proceed, dismissal is required.  The Court is sympathetic to Mr. Newman's loss of his son, but the Court is bound to apply the well-established rules of *res judicata*, and the law of Florida as to emotional distress claims (particularly when such claims are based on conduct of a party during litigation).  Based on the above, it is hereby

ORDERED AND ADJUDGED that the Motion to Dismiss is granted.  The Amended Complaint is DISMISSED, with prejudice.  This case is closed.

DONE AND ORDERED in Chambers in Miami this 22nd day of May 2013.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

copies to:   counsel of record

Case 1:10-cv-21311-WMH   Document 51   Entered on FLSD Docket 05/22/2013   Page 24 of 24

claim fails to include a causally-related physical impact or injury or to otherwise state a claim for relief under a negligence theory.

CONCLUSION

As the Court has determined that the Amended Complaint fails to state any claims which may proceed, dismissal is required.  The Court is sympathetic to Mr. Newman's loss of his son, but the Court is bound to apply the well-established rules of *res judicata*, and the law of Florida as to emotional distress claims (particularly when such claims are based on conduct of a party during litigation).  Based on the above, it is hereby

ORDERED AND ADJUDGED that the Motion to Dismiss is granted.  The Amended Complaint is DISMISSED, with prejudice.  This case is closed.

DONE AND ORDERED in Chambers in Miami this <u>22nd</u> day of May 2013.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

copies to:   counsel of record